IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-276-D

| | |
|---|---|
| AMY WEBB, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) **MEMORANDUM &**<br>) **RECOMMENDATION**<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-47 & 49). The time for filing any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-51). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-47) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-49) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on January 18, 2009 alleging that she became unable to work on March 1, 2008. (Tr. 10). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a

1

decision dated June 16, 2010. *Id.* at 10-19. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on April 7, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-6. Plaintiff filed the instant action on June 2, 2011. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

2

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 12). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) rheumatoid arthritis; 2) psoriasis; 3) intermittent sinus bradycardia; and 4) mild osteoarthritis. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 13. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. *Id.*

Based in part on the testimony of a vocational expert ("VE"), the ALJ then determined that

Plaintiff was able to perform her past relevant work. *Id.* at 17. In the alternative, the ALJ also concluded that there were a significant number of other jobs in the national economy that Plaintiff could perform. *Id*. at 17-18. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 19. These determinations were supported by substantial evidence, a summary of which now follows.

On March 21, 2008 it was noted that Plaintiff was being treated "after being seen in the ER for [rheumatoid arthritis]." *Id.* at 648. Plaintiff reported "feeling much better with steroids." *Id.*

Plaintiff was examined by Dr. Maria J. Watson on April 11, 2008. *Id.* at 409. It was noted that Plaintiff had a history of rheumatoid arthritis. *Id.* She complained of joint pain, swelling and stiffness. *Id.* However, she was still working. *Id.* Upon examination, Plaintiff demonstrated swelling and decreased range of motion. *Id.* at 410. Dr. Watson stated that "there is no question that [Plaintiff] has rheumatoid arthritis." *Id.* This was treated with Methotrextate, Orencia and Percocet. *Id.*

On June 20, 2008, it was noted that Plaintiff experienced hand swelling and wrist pain. *Id.* at 558. These conditions were progressively worsening. *Id.*

Dr. Watson stated on June 23, 2008 that Plaintiff was "better", although she still had trouble functioning. *Id.* at 575. Swelling and decreased range of motion were again observed. *Id.* Plaintiff had quite a bit of joint pain and stiffness. *Id.* Ultimately, Dr. Watson opined that Plaintiff's rheumatoid arthritis was " fairly severe . . . [d]espite the fact that her tests are negative . . ." *Id.* She also indicated that "I believe at this time [Plaintiff] is disabled" and that Plaintiff "is not capable of doing much." *Id.* at 721.

Plaintiff's RFC was assessed by Dr. Glenn James on August 2, 2008. *Id.* at 609. It was

determined that Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift and/or carry 10 pounds; 3) stand and/or walk for a total of about six hours in an eight hour workday; and 4) sit for a total of about six hours in an eight hour workday. *Id.* at 610. She could perform most postural activities on a frequent basis, although she could never climb ladders, ropes or scaffolds. *Id.* at 611. No manipulative, visual, communicative or environmental limitations were noted. *Id.* at 612-613.

Dr. Watson stated on August 18, 2008 that Plaintiff's Orencia infusions had been "helpful" and that Plaintiff seemed "to be doing okay on it." *Id.* at 711. Examination revealed "slight improvement of the MCP joints . . ." *Id.* Ultimately, Dr. Watson concluded that Plaintiff was improving. *Id.* at 712.

During an August 20, 2008 examination, Plaintiff had "[n]o generalized pain . . ." *Id.* at 1015.

On September 26, 2008, Dr. Watson stated that Plaintiff had "multiple joint inflammation, which is not fully controlled." *Id.* at 709. She also stated that this condition "makes it almost impossible to care for herself and her children on her own." *Id.* Dr. Watson noted that medication could make Plaintiff more functional, although this was not guaranteed. *Id.*

During a December 17, 2008 appointment with Dr. Watson, Plaintiff stated "that she is doing much better now." *Id.* at 702. Upon examination, Plaintiff had "a little bit of tenderness over the wrists . . ." *Id.* Her proximal interphalangeal ("PIP") joints had no active inflammation, and her distal interphalangeal ("DIP") joints were normal. *Id.* She had a full range of motion in her hips. *Id.* Ultimately, Dr. Watson opined that Plaintiff was "stable" and needed to remain on her medications. *Id.*

On March 31, 2009, Plaintiff was examined again by Dr. Watson. *Id.* at 791. Plaintiff

5

seemed "to be doing okay." *Id.* Her medications also seemed to be helpful. *Id.* She had no recent problems. *Id.* Plaintiff's PIP and DIP joints were "fairly normal." *Id.* Dr. Watson concluded that Plaintiff "still has some problems with her hands with a little bit of pain but she is doing okay." *Id.*

Dr. Alan Cohen examined Plaintiff on April 22, 2009. *Id.* at 681. Plaintiff had normal sinus rhythm. *Id.* She reported joint pain, stiffness, swelling and weakness. *Id.* at 682. Her rheumatoid arthritis was described as stable. *Id.* at 683. According to Dr. Cohen, Plaintiff's ability to sit, stand and travel was not impaired. *Id.* Likewise, Plaintiff's stamina was not impaired. *Id.* Plaintiff's ability to move about, lift and handle objects were mildly to moderately impaired. *Id.*

Dr. Stephen Burge assessed Plaintiff's RFC on May 8, 2009. *Id.* at 731. It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk for a total of about six hours in an eight hour workday; and 4) sit for a total of about six hours in an eight hour workday. *Id.* at 732. No postural, manipulative, visual, communicative or environmental limitations were noted. *Id.* at 732-734.

Dr. Watson examined Plaintiff on June 26, 2009. *Id.* at 1113. Plaintiff seemed "to be doing okay." *Id.* She had no swelling, tenderness or effusions in her elbows or wrists. *Id.* Likewise, Plaintiff had a full range of motion in her hips, and "fairly good range of motion" in her ankles. *Id.* Finally, Dr. Watson stated that "I think the Orencia has been helping and therefore she may not need it that much longer . . ." *Id.* at 1114.

Plaintiff's RFC was assessed by Dr. Frank Virgili on July 21, 2009. *Id.* at 893. It was determined that Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift

and/or carry 10 pounds; 3) stand and/or walk for a total of about six hours in an eight hour workday; and 4) sit for a total of about six hours in an eight hour workday. *Id.* at 894. No postural, manipulative, visual, communicative or environmental limitations were noted. *Id.* at 895-897.

On August 25, 2009, Plaintiff noted that she experienced increased swelling and pain in her hands which occurred "with increased activity, especially when working on the computer." *Id.* at 1111. They symptoms improved after she received a Orencia infusion. *Id.* Upon examination, Plaintiff generally had no swelling or tenderness. *Id.* Dr. Watson described Plaintiff's inflammation as "mild." *Id.*

Dr. Watson completed a questionnaire regarding Plaintiff's impairments on September 25, 2009. *Id.* at 1105. During Plaintiff's most recent examination her ankles had inflammation or deformity. *Id.* However, Plaintiff's rheumatoid arthritis did not affect any other body systems. *Id.* Plaintiff experienced "significant" fatigue and "mild" malaise. *Id.* at 1106. Dr. Watson indicated that Plaintiff had moderate limitations in activities of daily living and in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* Furthermore, Dr. Watson observed that Plaintiff could:  1) stand for 30 minutes at a time; 2) sit for 15 minutes at a time; 3) lift 5 pounds on an occasional basis; and 4) perform manipulation and reaching on an occasional basis . *Id.* Later, Dr. Watson noted that Plaintiff can sit for 30 minutes at a time. *Id.* This discrepancy is not clarified. *Id.* It was also noted that Plaintiff has prolonged stiffness and soreness in her joints and can no longer work with computers or do repetitive motion because of hand swelling. *Id.* Ultimately, Dr. Watson concluded that Plaintiff "has rheumatoid arthritis and is unable to work" *Id.*

Plaintiff was examined by Dr. Watson on October 29, 2009. *Id.* at 1109. She was

7

"having more pain in her hands, feet and knees bilaterally." *Id.* However, Plaintiff admitted that she was "one week late on her Orencia infusion." *Id.* Celebrex had improved Plaintiff's joint and chest pain, and Plaintiff's pain was "functional with Percocet." *Id.* Plaintiff denied any post infusion reactions with her Orencia. *Id.* Dr. Watson concluded that Plaintiff's "rheumatoid arthritis is active but this is most likely related to the postponement of her Orencia infusion." *Id.*

On January 26, 2010, Plaintiff stated that her pain was "normal" and that she was "staying busy." *Id.* at 1108. However, Dr. Watson also noted that Plaintiff was "having some difficulty." *Id.* Plaintiff had "not had any major flares of her disease but has pain on and off." *Id.* She was having some difficulty with her activities of daily living. *Id.* Specifically, Plaintiff could not "do shoelaces and buttons all that well because of her hands." *Id.* Upon examination, Plaintiff had minimal tenderness and no major active inflammation. *Id.* She had good range of motion in her wrists. *Id.* Ultimately, Dr. Watson opined that Plaintiff's was stable and "actually doing fairly well on the medication." *Id.*

During a April 20, 2010 examination it was noted that Plaintiff had been diagnosed with psoriasis of the scalp, which was being treated using a psoriasis shampoo. *Id.* at 1133. It was further noted that Plaintiff was a "[c]omputer/technical network administrator [who] owns [a] tax business." *Id.* Plaintiff ambulated without assistance, and generally had a normal range of motion. *Id.* at 1135. She had no major swelling, tenderness or effusions in her hips, knees or ankles. *Id.* Overall, Plaintiff was described as "stable . . . [and] having some problems with psoriasis." *Id.*

Plaintiff testified that she could not drive long distances because it is "hard with her hands to turn the wheel properly." *Id.* at 66. She was taking college classes, which she attended in person. *Id.* at 67. Specifically, Plaintiff testified that she would "go in person and sit in class for

8

Case 5:11-cv-00276-D   Document 52   Filed 03/06/12   Page 8 of 14

an hour." *Id.* However, she completed her examinations online with the assistance of her daughter. *Id.* at 67-68. Plaintiff indicated that she no longer actively participated in her tax business and had not done so since 2008. *Id.* at 70-71. In describing her arthritis symptoms, Plaintiff testified that she could not: 1) use her hands; 2) write with a pencil; 3) sit down; or 4) lay down. *Id.* at 72. She testified that she is "never in a comfortable position because of the pain." *Id.* Likewise, Plaintiff indicated that she "can't really walk", because her feet swell up. *Id.* at 73. Walking, sitting or standing caused Plaintiff pain. *Id.* Plaintiff alleged that her medications caused her to feel nauseous and sleepy. *Id.* at 75. Furthermore, Plaintiff noted that she could not brush her hair. *Id.* at 75-76. However, Plaintiff stated that she can type "a little bit", although she has to stop when her hands start hurting. *Id.* at 75-76. She testified that there are no activities that she can do with her children. *Id.* at 78.

The VE testified that Plaintiff could perform her past relevant work as well as other jobs in the national economy. *Id.* at 89.

Based on this record, the ALJ made the following specific findings in addition to those previously noted:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of the claimant's alleged limitations, the severity of the claimant's allegations is not supported by the totality of the medical evidence of record. The claimant avers that she is "lucky" if she has 2-3 good days out of the week and otherwise is in pain at the intensity of 8 with medication on other days. However, the claimant's treating notes from her rheumatologist indicate that "the claimant has not had any major flares of her disease but has pain on and off" (Exh. 49F at 2). The treating notes also reveal that "overall, [the claimant's] pain is functional with Percocet." (Id. at 3).

9

Further, even though the claimant initially testified that suggests that she does not do much with her hands, she subsequently admits that she can check her email and is sometimes able to take her own online exams. The claimant also avers limitations with her ability to sit and stand; however, the claimant has been taking on-campus college courses at Fayetteville State University without any expressed difficulties.

As for the opinion evidence, the undersigned considered the physical residual functional capacity assessment by State agency consultative examiner Frank Virgili, M.D. (Exh. 42F). Dr. Virgili opined that the claimant was capable of performing work at the full range of the light exertional level. The undersigned accords partial weight to Dr. Virgili's opinion as the medical evidence generally supports a finding that the claimant is capable of performing work at the light exertional level. However, the undersigned finds that the medical evidence also supports a finding that the claimant is only able to handle and finger frequently.

Maria Watson, M.D. completed a Questionnaire pertaining to the claimant's physical abilities and limitations on September 25, 2009. (Exh. 48F). Dr. Watson opined that the claimant had inflammation and deformity of her left and right ankles; had significant fatigue; had moderate limitation of activities of daily living; mild limitation in maintaining social functioning; and moderate limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace. (Id. at 2-3). Dr. Watson further opined that the claimant can only stand 30 minutes at a time; sit 15 minutes at a time; lift 5 lbs occasionally; bend occasionally; never stoop; occasionally manipulate with her right hand; occasionally manipulate with her left hand; occasionally raise her left arm over the shoulder level; and occasionally raise her right arm over the shoulder level. (Exh. 48F at 3). Dr. Watson also added that the claimant "has rheumatoid arthritis and is unable to work. She has prolonged stiffness and soreness in her joints. She can sit 30 minutes but then has to get up. She can no longer work with computers or do repetitive motion because of hand swelling." (Id. at 3). The undersigned considered Dr. Watson's opinion in conjunction with her treating records and note inconsistencies in her opinion and the treating records. Dr. Watson first opined that the claimant could only sit 15 minutes at a time, but then commented that she could sit for 30 minutes and has to get up. She also reported that the claimant has prolonged stiffness and soreness in the claimant's joints but her treating not document that the claimant's stiffness "last about 20-30 minutes in the morning." (Exh. 38F at 32). Furthermore, the chronological treating records illustrate that the claimant showed improvement with her medications and her disease has become stable. (See e.g., Exhs. 38F and 49F). The joint exam from the claimant's visit on January 26, 2010 revealed that the claimant's "wrists show good range of motion bilaterally with no synovitis." (Exh. 49F at 2).

10

> The undersigned also notes that Dr. Watson completed this Questionnaire in September 2009 and it has not been updated to reflect the claimant's most recent progress. Consequently, the undersigned gives little weight to Dr. Watson's opinion.
>
> In sum, the above residual functional capacity assessment is supported by the totality of the evidence, as discussed. Given the inconsistencies in the severity of symptoms alleged by the claimant and the evidence documented in the medical records, a further degree of limitation is not warranted.
>
> *Id.* at 16-17.

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit. The undersigned will nonetheless address Plaintiff's specific assignment of error.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff contends that the ALJ incorrectly assessed her credibility. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739

F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig, 76 F.3d at 593-596. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Accordingly, this

assignment of error is without merit.

**The ALJ correctly evaluated the medical record**

Plaintiff contends that the ALJ did not give the opinion of Plaintiff's treating physician controlling weight even though there was no substantial evidence to contradict it. The undersigned disagrees.

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209, * 2 (4th Cir. 1999) (unpublished

opinion)(internal citations omitted).

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-47) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-49) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, March 06, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE